Earl,
Commissioner.—As the court refused to submit the case to the jury and ordered a verdict for the plaintiffs, it is sufficient to require a new trial, that there was some evidence tending to establish the defense which ought to have been submitted to the jury ; and, in considering this case, I will assume the facts to be substantially as testified to by the defendant.
Under the agreement of June 12, the defendant was not bound to manufacture any blankets ; but all he did manufacture, he was bound, during the three years, to consign to the plaintiffs for sale.
The plaintiffs, although they did not expressly agree to sell, were impliedly bound to sell all the blankets which should thus be consigned to them, and for their services, charges and insurance, and for their guaranty of payment for the goods sold, they were to have a commission of seven and one-half per cent.
Under this agreement the plaintiffs were defendant’s factors, and in making the sales of the goods were, like other factors, bound to follow his instructions. They were not bound to make him any advances nor to pay him the cash when the goods were sold upon credit, but in such case they were simply bound to guaranty the credit of their customers.
Under this agreement the parties went on until December, 1861, when, the sales being dull, the defendant being short of money, and the plaintiffs refusing to make advances, he concluded to stop manufacturing. He, therefore, did stop until August, 1862, when he learned that the government of the United States were giving out contracts for blankets. He then went to the *139 plaintiffs and proposed to them to start his looms again, and take a contract from the government if they would become his sureties in the contract, and take the government pay and pay him cash as he delivered the goods, and he would allow them a commission of seven and one-half per cent. This proposition plaintiffs accepted, and the terms were thus settled, upon which the defendant would again enter upon the manufacture of blankets.
The first effort of the parties, in pursuance of this agreement, to procure a contract from the government failed. A second one was more successful. The defendant, with the aid of the plaintiffs’ agent, obtained a contract, and after he had signed and become bound by the same, and had entered upon the performance thereof, and for the purpose had incurred large expenses, the plaintiffs repudiated the agreement, refused to become his sureties, and declined to pay him cash for the goods as he should then deliver them to the government.
The defendant then procured other sureties, and performed his contract with the government. And yet it is claimed by the plaintiffs that they are entitled to their commissions upon the blankets as if they had been consigned to them under the original written agreement. I cannot assent to this claim. Under the agreement the defendant was not bound to manufacture any blankets. It was always in his power to dictate the terms upon which he would commence or continue the manufacture. He had the right to say that he would not manufacture unless they would sell for five per cent., or unless they would make him advances or become his sureties. This new agreement imposed upon or exacted from the plaintiffs, would in no proper sense be a violation on the part of the defendant of the old one, because under that he was not bound to manufacture. It would take the goods man *140 ufactured under it, out of the old agreement and create new rights and relations between the parties. Suppose the defendant had refused to manufacture any blankets unless the plaintiffs would sell them for five instead of seven and one-half per cent., and the plaintiffs had assented to this, and the defendant had then gone on and consigned the goods to them for sale. Could they have charged seven and a half per cent. ? Clearly not. If nothing else forbade it, the law of equitable estoppel in pais would.
I am then of opinion, that after this new agreement was made, and in pursuance of it the defendant had entered into a contract with the government and commenced its execution, and the blankets thus to be manufactured had been taken out of the old agreement, they could not again be brought within its scope, by the repudiation of the agreement on the part of the plaintiffs.
But there is another reason for a new trial, still more obvious. There was, at least, evidence tending to show that the plaintiffs refused finally to have anything to do with the government contract, and that they consented that the defendant might manufacture, sell and deliver the goods to the government. In this aspect of the case, they waived their right to the delivery of the goods to themselves, under their contract. After this waiver had been acted upon by the defendant, upon what principle of law or justice could the plaintiffs claim their commissions ? A party entitled to the performance of a sealed contract may waive its performance by parole, and after he has thus waived it, he is estopped from claiming a non-performance induced by his own conduct (Fleming v. Gilbert, 3 Johns. Ch., 528).
I am, therefore, of the opinion that the judgment should be reversed and new trial granted, costs to abide event.
Judgment accordingly.